IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICHELLE JOHNSON, *on behalf of* JAVJ, | CASE NO. 1:14-cv-00141 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

Plaintiff, Nichelle Johnson ("Plaintiff") on behalf of her son, JAVJ, a minor, ("Claimant"), seeks judicial review of the final decision of the Defendant, Commissioner of Social Security ("Commissioner"), denying Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. (The "Act"). Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 16.

For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I. Procedural History

On or about May 5, 2010, Claimant's mother filed an application for SSI on behalf of Claimant. Tr. 28, 51, 135-139, 148. Plaintiff alleged that Claimant was disabled based on liver problems, sickle cell anemia, hepatitis C, and ADD. Tr. 29, 38, 71, 81, 161. Plaintiff alleged that Claimant's disability onset date was January 1, 2004.[1] Tr. 29, 38, 51, 148, 161. The claim was denied initially (Tr. 71-77) and upon reconsideration (Tr. 81-87). A hearing was requested

---
[1] During the hearing, Plaintiff amended the alleged disability onset date to May 5, 2010, the date of the application. Tr. 12.

1

(Tr. 88-90) and, on July 24, 2012, a hearing was held before Administrative Law Judge Lovert F. Bassett (the "ALJ") (Tr. 10-27). In his October 17, 2012, decision, the ALJ determined that Claimant had not been under a disability since May 5, 2010, the date the application was filed. Tr. 48-68. Plaintiff requested review of the ALJ's decision by the Appeals Council. Tr. 8-9. On December 3, 2013, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

## II. Evidence

### A. Personal and Educational Evidence

Claimant was born in 2000. Tr. 135, 148. At the time of the hearing, Claimant was on summer break. Tr. 13. He had just finished summer school for math, language arts, and English. Tr. 13. Once school resumed, he would be entering the seventh grade. Tr. 13. Claimant has never been held back in classes but he has had to take summer school for the past three years in order to advance to the next grade. Tr. 13. Claimant has lived with his mother since his birth. Tr. 12-13.

### B. Testimonial Evidence

#### 1. Plaintiff's testimony

Plaintiff was represented by counsel and testified at the hearing. Tr. 12-15, 15-17. Plaintiff stated that Claimant is a good kid but it is hard for him to sit still and follow directions. Tr. 14. Claimant is forgetful and has to be reminded to do things. Tr. 14. When Claimant is feeling well, he likes bouncing off the couch, playing video games and watching television. Tr. 14. He does not always feel well because he is highly fatigued and has no energy. Tr. 14. He gets fevers and complains of belly pain. Tr. 14. Because of health related issues, Claimant missed approximately 10-12 days of school during the prior school year. Tr. 15.

      **2.**      **Medical expert testimony**

Dr. Milford Schwartz, M.D., a pediatrician, testified as a medical expert ("ME") during the hearing. Tr. 15-24, 123-124, 126. The ME indicated that Claimant had the following severe impairments: chronic hepatitis C, factor IX deficiency,[2] and attention deficit hyperactivity disorder. Tr. 17. He indicated that, based on the information that he had, he was able to conclude that Claimant had a marked limitation in domain number six (health and physical well-being). Tr. 19. He also indicated that domains one and two (acquiring and using information and attending and completing tasks) might be at issue in the case but, without additional information, he was unable to offer an opinion as to the extent of Claimant's limitations, if any, in those domains. Tr. 17-19. In particular, the ME felt it was important to obtain an updated teacher questionnaire because the teacher questionnaire in the file was 2 years old. Tr. 18-19. Additionally, at the time the 2010 questionnaire was completed, Claimant had recently started medication for his attention deficit disorder. Tr. 18-19, 24-25. Therefore, the ME was uncertain as to whether the teacher was reporting how the Claimant was doing at the time she completed the questionnaire or whether she was reporting how he had been doing for the prior few months and/or whether the questionnaire reflected optimal medication effects since the Claimant had only recently started his medication. Tr. 18-19, 24-25.

As a result of the foregoing, Claimant's counsel agreed to work on getting an updated teacher questionnaire and, because it was the summertime, the ALJ granted Claimant's counsel 60, rather than the customary 30, days in which to submit the additional evidence. Tr. 19-20, 25-26.

---

[2] The ME explained that factor IX deficiency is a clotting disorder in the hemophilia family. Tr. 17.

**C.    Medical evidence**

Claimant was exposed to drugs and alcohol in utero. Tr. 324, 453. He has hepatitis C and sickle-cell trait. Tr. 319, 363, 421, 424, 450. He contracted hepatitis C at birth. Tr. 363. He also has factor IX deficiency. Tr. 363, 427. Claimant has had multiple liver biopsies. Tr. 363. He has had problems gaining weight. Tr. 431. He also has attention deficit hyperactivity disorder. Tr. 328, 458.

Dr. Rachel B. Tangen, Ph.D., ABPP-CN, of Rainbow Babies & Children Hospital, completed two neuropsychological evaluations. Tr. 324-335, 453-464. The first evaluation was completed at the end of 2009 and the beginning of 2010 following reports from Claimant's mother that she was concerned about Claimant's inattention, impulsiveness, forgetfulness, hyperactivity, and a decline in his school grades. ("2009 evaluation) Tr. 324-335. The evaluation was conducted in order to assess Claimant's cognitive, academic, and behavioral functioning. Tr. 324-335. Two years later, in April 2012, Claimant was referred again to Dr. Tangen for a neuropsychological re-evaluation to reassess Claimant's cognitive problems related to his early medical history. ("2012 evaluation").[3]   453-464.

*2009 evaluation*

Based on her evaluation, Dr. Tangen diagnosed Claimant with: cognitive disorder, not otherwise specified (due to medical condition); executive function deficits (working memory, sustained attention, impulse control, planning, cognitive flexibility); fine motor and visual motor deficits; visual memory deficits; attention deficit hyperactivity disorder, combined type. Tr. 328. With respect to Claimant's attention/executive functions, Dr. Tangen concluded that overall

---

[3] It appears that Plaintiff submitted the 2012 evaluation to the Social Security Administration, Office of Disability Adjudication and Review, on August 3, 2012, after the July 24, 2012, hearing but prior to the ALJ's October 17, 2012, decision. Tr. 252, 263-274 (Exhibit 18E). The 2012 evaluation is also located in the record at Tr. 453-464 (Exhibit 20F).

Claimant showed significant deficits in attention and executive function skills. Tr. 327. As part of the summary portion of her opinion, Dr. Tangen stated:

> [Claimant] has a history of in utero exposure to drugs and alcohol and he generally has better developed language based than visual/nonverbal based skills. He demonstrated significant problems with nonverbal reasoning, visual-spatial perception, visual motor integration, fine motor dexterity, visual memory attention, and executive functions.

Tr. 328.

*2012 evaluation*

In her 2012 evaluation, Dr. Tangen noted that, since his 2009 evaluation, Claimant had started taking Concerta, which had been prescribed by his pediatrician. Tr. 453; *see also* Tr. 382 (March 2010 office visit note indicating that Claimant was going to begin a trial of Concerta). Based on her 2012 re-evaluation, Dr. Tangen diagnosed Claimant with: attention deficit hyperactivity disorder, combined type; cognitive disorder, NOS (due to medical history); executive function deficits (working memory, sustained attention, impulse control, planning, cognitive flexibility); and mild motor and visual memory deficits. Tr. 458. With respect to Claimant's attention/executive functions, Dr. Tangen concluded that:

> [Claimant's] sustained attention remained impaired on a computerized task. He was impulsive and showed variable responsiveness over time, indicating poor vigilance. He was also administered selected subtests from the Delis Kaplan Executive Function System and to assess attention and executive function. He demonstrated improved performance, but he still had some mild areas of weakness. His verbal fluency improved from the low average to average range. His focused attention, sequencing, and switching attention improved to the average range. His ability to find the final solution to a problem solving task was [sic] remained in the average range, but his planning remained below average for his age. [Claimant's] mother completed the BRIEF and reported significant problems with shifting attention, initiating tasks, working memory, planning, and organization in daily life. Overall, [Claimant] has shown significant improvement in several areas of executive functioning, but he continues to demonstrate deficits in sustaining attention, impulsivity, and planning.

Tr. 456. As part of the summary portion of her opinion, Dr. Tangen stated:

5

> [Claimant] has significant improvement in cognitive functioning since he began taking stimulant medication (Concerta), indicating that attention was playing a large part in his initial poor performance.  He continues to demonstrate mild problems with attention, executive functions, visual memory, visual motor integration, and fine motor speed.

Tr. 458.

**D.   Educational records**

In December 2009, while Claimant was in the fourth grade, school psychologist Michelle Woody observed and evaluated Claimant's behavior.  Tr. 309-312.  Claimant's mother reported that the transition from third to fourth grade had been hard for Claimant.  Tr. 309.  Claimant's fourth grade teachers reported that Claimant acted and reacted impulsively.  Tr. 309.  Based on Ms. Woody's observations, she made several classroom intervention suggestions, including preferential seating near his teacher to help prevent off task behavior; placing Claimant on a behavior contract; Claimant should try to wait until a question is asked before raising his hand; reinforcement of the importance of checking/editing work before turning it in; and more practice in being prepared and organized for class.  Tr. 311-312.

On May 25, 2010, Claimant's homeroom teacher, Bonita Bohn, who taught Claimant spelling and religion, completed a Social Security Administration Teacher Questionnaire.  Tr. 346-353.  She rated Claimant's abilities in the six domains of: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being.  Tr. 347-352.  With respect to the attending and completing tasks domain, Ms. Bohn rated Claimant in 13 categories.[4]  Tr. 348.  In one category – sustaining attention during play/sports activities – Ms. Bohn rated Claimant as having no problem.  Tr. 348.  She rated Claimant as

---

[4] The five ratings were: (1) no problem; (2) a slight problem; (3) an obvious problem; (4) a serious problem; and (5) a very serious problem.  Tr. 348.

6

having a slight problem in 2 categories – (1) paying attention when spoken to directly; and (2) carrying out single-step instructions. Tr. 348. She rated Claimant as having an obvious problem in 2 categories – (1) focusing long enough to finish assigned activity or task; and (2) refocusing to task when necessary. Tr. 348. She rated Claimant as having a serious problem in 6 categories – (1) carrying out multi-step instructions; (2) waiting to take turns; (3) changing from one activity to another without being disruptive; (4) completing class/homework assignments; (5) completing work accurately without careless mistakes; and (6) working at reasonable pace/finishing on time. Tr. 348. She rated Claimant as having a very serious problem in 2 categories – (1) organizing own things or school materials; and (2) working without distracting self or others. Tr. 348. Also, with respect to the attending and completing tasks domain, Ms. Bohn noted that Claimant "needs constant cues to remain on task and reminders to stay in his seat and not walk around the room disturbing others." Tr. 348.

On May 22, 2012, Claimant's religion, math, science and social studies teacher, D'arcy A. Zeigler, completed a Social Security Administration Teacher Questionnaire wherein she also rated Claimant's abilities in the six domains.[5] Tr. 253-260. In the 13 attending and completing tasks categories, Ms. Zeigler found no category in which Claimant exhibited a very serious or a serious problem. Tr. 255. She rated Claimant as having an obvious problem in 3 categories – (1) changing from one activity to another without being disruptive; (2) organizing own things or school materials; and (3) completing work accurately, without careless mistakes. Tr. 255. She rated Claimant as having a slight problem in 5 categories – (1) focusing long enough to finish assigned activity or task; (2) refocusing to task when necessary; (3) carrying out multi-step instructions; (4) waiting to take turns; (5) working without distracting self or others. Tr. 255. She

---

[5] It appears that Plaintiff submitted Ms. Zeigler's May 22, 2012, to the Social Security Administration, Office of Disability Adjudication and Review, on August 3, 2012, after the July 24, 2012, but prior to the ALJ's October 17, 2012, decision. Tr. 252.

rated Claimant as having no problem in 5 categories – (1) paying attention when spoken to directly; (2) sustaining attention during play/sports activities; (3) carrying out single-step instructions; (4) completing class/homework assignments; and (5) working at reasonable pace/finishing on time. Tr. 255.

### III. Standard for Disability

The standard for evaluating a child's disability claim differs from that used for an adult. 42 U.S.C. § 1382c(a)(3)(C); *see also Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 146, 147-148 (6th Cir. 2002). A child is considered disabled if he has a "medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At Step One, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At Step Two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At Step Three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1; 20 C.F.R. § 416.924(d).[6]

At Step Three, to determine whether a child's impairment *functionally* equals the Listings, the Commissioner will assess the functional limitations caused by the impairment. 20 C.F.R. § 416.926a(a). The Commissioner will consider how a child functions in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting

---

[6] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.

and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment results in "marked" limitations[7] in two domains, or an "extreme" limitation[8] in one domain, the impairment *functionally* equals the listings and the child will be found disabled. 20 C.F.R. § 416.926a(d).

### IV. The ALJ's Decision

In his October 17, 2012, decision, the ALJ made the following findings:[9]

1. Claimant was born in 2000. He was a preschooler[10] on May 5, 2010, the date the application was filed, and was a school-age child[11] at the time of the decision. Tr. 54.

2. Claimant has not engaged in substantial gainful activity since May 5, 2010, the application date. Tr. 54.

3. Claimant has the following severe impairments: hepatitis C infection and attention deficit disorder. Tr. 54.

4. Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 54.

---

[7] A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id.* "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

[8] An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." *Id.* "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*

[9] The ALJ's findings are summarized herein.

[10] "Preschool children" include children who are age 3 to attainment of age 6. *See* 20 C.F.R. § 416.926a(g)(2)(iii). Claimant was actually 9 years of age as of May 5, 2010, the date the application was filed. Thus, the ALJ may have been referring to Claimant's status as of the alleged disability onset date, i.e., January 1, 2004. In any event, Plaintiff has not raised an issue with respect to this finding.

[11] "School-age children" include children who are age 6 to attainment of age 12. *See* 20 C.F.R. § 416.926a(g)(2)(iv).

9

> 5. Claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings. Tr. 54-62. Claimant has a marked limitation in only one domain, health and physical well-being (Tr. 62) and less than marked limitation or no limitation in the other five domains (Tr. 54-61).

Based on the foregoing, the ALJ determined that Claimant had not been under a disability since May 5, 2010, the date the application was filed. Tr. 62.

### V. Parties' Arguments

Plaintiff argues that, in addition to finding a marked impairment in the domain of health and physical well-being, the ALJ should have found a second marked impairment in the attending and completing tasks domain. Doc. 18, pp. 6-8, Doc. 21. Plaintiff argues that, when finding less than marked impairment in the domain of attending and completing tasks, the ALJ improperly relied entirely upon Dr. Tangen's April 2012 neuropsychological evaluation and failed to fully articulate his rationale for not finding a marked limitation in that domain. Doc. 18, pp. 6-8, Doc. 21. Plaintiff also adds that, because the ME stated that he needed more information in order to provide an opinion regarding functional equivalency, the ALJ erred by not sending the records submitted after the hearing to the ME or, alternatively, scheduling a supplemental hearing. Doc. 18, p. 8. Plaintiff also argues that the ALJ erred in evaluating the credibility of her statements regarding her son's impairments and the extent of his limitations. Doc. 18, pp. 8-10.

In response, the Commissioner argues that the ALJ properly relied upon Dr. Tangen's April 2012 evaluation and that the ALJ's finding of less than marked limitations in the attending and completing tasks domain was supported by substantial evidence. Doc. 20, pp. 6-8. With respect to Plaintiff's contention that the ALJ should have sent additional information to the ME or should have scheduled a supplemental hearing, the Commissioner argues that an ALJ has discretion to determine whether ME testimony is necessary and, in this case, the ALJ had

sufficient information upon which to make his determination. Doc. 20, p. 8. The Commissioner also argues that the ALJ considered Plaintiff's testimony and reasonably evaluated the credibility of her testimony. Doc. 20, pp. 8-10.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

A court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d 931, 939-940 (6th Cir. 2011) (citing *Blakely v. Comm'r of Soc Sec*, 581 F.3d 399, 407 (6th Cir. 2009) (internal quotations omitted)).

**A.    The ALJ's finding of less than marked limitation in the domain of attending and completing tasks is supported by substantial evidence**

Plaintiff challenges that ALJ's finding of less than marked limitation in the attending and completing tasks domain. Doc. 18, pp. 6-8, Doc. 21. Plaintiff argues that, since the ALJ found a marked limitation in another domain, i.e., health and physical well-being, had the ALJ found a marked limitation in attending and completing tasks, Plaintiff would have an impairment that

11

functionally equals a listing.

    With respect to the domain of attending and completing tasks, the ALJ stated:

> <u>The claimant has less than marked limitation in attending and completing tasks.</u> The April 2012 examination related that during exam it was indicated that the claimant had a history of exposure to drugs and alcohol inutero and had a diagnosis of Cognitive disorder and attention deficit hyperactivity disorder. [Claimant] was taking Concerta for his attention deficits and based on the evaluation he appeared to have mild difficulties (20F).[12]

Tr. 58.

    Plaintiff contends that the foregoing demonstrates that the ALJ did not fully consider the entire record and/or did not explain how the April 2012 evaluation correlated to mild difficulties in attending and completing tasks. However, the ALJ's finding of less than marked limitation in attending and completing tasks was supported by Dr. Tangen's 2012 evaluation. As reflected in the April 2012 evaluation, although Dr. Tangen found that Claimant showed deficits in attention and executive function, she opined that those deficits were mild and Claimant had shown significant improvement in cognitive functioning since he started taking his stimulant medication (Concerta). Tr. 458.

    Plaintiff acknowledges that the April 2012 evaluation suggested that Claimant had mild problems and scored in the average range in many of the areas that were tested. Doc. 21, p. 3. However, she argues that there are other portions of Dr. Tangen's April 2012 evaluation that would support a finding of marked limitation in the attending and completing tasks domain. Doc. 21, p. 3. For example, Plaintiff points out that Dr. Tangen stated in the evaluation that, while there had been some improvement in Claimant's attention, according to his mother, he continued to have problems with organization and comprehension. Tr. 453. Also, Claimant was fidgety, over active and talkative. Tr.453, 454. Also, Plaintiff points out that, on examination, Dr. Tangen observed that Claimant's attention during one-on-one testing was appropriate but he had

---

[12] Exhibit 20F is Dr. Tangent's April 2012 neuropsychological evaluation. Tr. 453-465.

12

difficulty with self-directed attention tasks and he talked to himself during tasks. Tr. 454. While Plaintiff contends that there are statements within Dr. Tangen's report that the ALJ did not reference, an ALJ is not required to cite to each and every piece of evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006). Moreover, while Plaintiff contends that those statements support a finding of marked limitation in the attending and completing tasks domain, even if there is substantial evidence or indeed a preponderance of the evidence to support a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. Additionally, in determining whether there is substantial evidence to support the Commissioner's decision, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Gaffney*, 825 F.2d at 100. Here, as discussed, Dr. Tangen's April 2012 evaluation supports the ALJ's finding of less than marked limitation in the attending and completing tasks domain.[13] Accordingly, reversal and remand is not warranted.

Plaintiff argues that the ALJ erred by not obtaining further ME testimony after receiving Dr. Tangen's April 2012 evaluation or a more current teacher questionnaire. Doc. 18, pp. 8, 10. However, whether or not ME testimony is necessary is within the ALJ's discretion. *See* 20 C.F.R. 416.927(e)(2)(iii) ("Administrative law judges *may* also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to subpart P of part

---

[13] In her Reply Brief, Plaintiff suggests that the ALJ's failure to consider Dr. Tangen's 2009 neuropsychological evaluation for the purpose of determining whether a closed period of disability may have been appropriate was error. Doc. 21, p. 2. However, her argument is not fully articulated. For example, Plaintiff does not argue what findings in the 2009 neuropsychological evaluation would warrant a finding of disability for a closed period nor does she indicate what the closed period would be. In light of the lack of articulation, Plaintiff's is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

404 of this chapter.") (emphasis supplied). Further, Plaintiff has not alleged special circumstances or that a heightened duty to develop the record applied in this case and, absent special circumstances, such as where a claimant is not represented by counsel, there is no heightened duty on an ALJ to develop the record and the claimant bears the burden of proving disability. *See Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008). Thus, Plaintiff has failed to demonstrate that the ALJ committed error by not obtaining further ME testimony.

Even if it was determined that the ALJ was required to take additional steps to develop the record by obtaining further ME testimony, Plaintiff has failed to demonstrate that the ALJ's failure to do so prejudiced Claimant. The ME indicated that he would be interested in seeing a more current teacher questionnaire to see the impact, if any, Claimant's medication had on his non-physical functional abilities. Tr. 18-19, 20. However, to the extent that Plaintiff claims that the ALJ erred in not providing the ME with a copy of Ms. Zeigler's May 22, 2012, teacher questionnaire (Tr. 253-260),[14] Plaintiff has not explained how that more current teacher questionnaire would have had an impact on the outcome of the case. In fact, a comparison of the 2010 Teacher Questionnaire (Tr. 346-353) with the more current 2012 Teacher Questionnaire (Tr. 253-260) reveals that Claimant's teachers reported that Claimant had fewer problems in attending and completing tasks in 2012 than in 2010. *Cf.* Tr. 255 (2012) *with* Tr. 348 (2010).[15] With respect to Plaintiff's claim that the ALJ was required to send the 2012 neuropsychological evaluation to the ME, the ME indicated that he would be interested in seeing a more current

---

[14] Plaintiff does not clearly identify the teacher questionnaire she claims the ALJ should have sent to the ME. (Doc. 18, p. 6 (referencing a teacher questionnaire but providing no record citation for that record)).

[15] Additionally, the more current teacher questionnaire is dated May 22, 2012, (Tr. 253-260), which was prior to the July 24, 2012, hearing (Tr. 10) but it does not appear that Plaintiff submitted that questionnaire until August 3, 2012, after the hearing (Tr. 252).

14

teacher questionnaire, not an updated neuropsychological evaluation. Tr. 18-19, 20. Also, as discussed above, Plaintiff has failed to demonstrate that the ALJ's finding of less than marked limitation in the attending and completing tasks domain is not supported by the 2012 neuropsychological evaluation.[16]

In light of the foregoing, the Court concludes that reversal and remand is not warranted for further ME testimony regarding additional evidence submitted after the hearing.

**B.     The ALJ properly assessed the credibility of Claimant's mother's testimony regarding the severity of Claimant's symptoms**

Plaintiff argues that the ALJ improperly discounted her statements regarding the severity of Claimant's symptoms when finding that Claimant had less than marked limitation in the attending and completing tasks domain. Doc. 18, pp. 8-10. In particular, Plaintiff argues that the record supported Plaintiff's statements regarding how fatigued Claimant was when he returned from school but the ALJ improperly discounted this testimony. Doc. 18, p. 10.

Social Security Ruling 96–7p and 20 C.F.R. § 404.1529 describe a two-part process for assessing the credibility of an individual's subjective statements about his or her symptoms. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; then the ALJ must evaluate the intensity and persistence associated with those symptoms to determine how those symptoms limit a claimant's ability to work.

When evaluating the intensity and persistence of a claimant's symptoms, consideration is given to objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken

---

[16] Additionally, Dr. Tangen completed her evaluation in April 2012, approximately three months prior to the July 24, 2012, hearing. However, it does not appear that Plaintiff submitted that evaluation until after the hearing. Tr. 252.

to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); Soc. Sec. Rul. 96–7p, 1996 WL 374186, at * 3 (July 2, 1996). "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Calvin v. Comm'r of Soc. Sec.*, 437 F. Appx. 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997)).

When assessing the credibility of Plaintiff's and Claimant's statements regarding the severity of Claimant's alleged symptoms, the ALJ stated:

> The claimant and his mother argue that the claimant suffers with headaches and fatigue. They allege that the claimant becomes confused easily and is tired when he returns from school caused by his severe liver difficulties.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equal the listing for the reasons explained below.
>
> In terms of the claimant's alleged restrictions given by the claimant and his mother, which are caused by his impairment, the medical and school reports does not provide supports for the allegations of marked restrictions and limitations that the claimant argues he has.
>
> It is factual that the claimant had some cognitive difficulties early on but based on testing scores the claimant has improved and his impairments appear to be fairly stabilized as will be discussed below.

Tr. 55. The ALJ thereafter proceeded to discuss each of the six domains. Tr. 56-62.

Plaintiff claims that the ALJ simply recited the boilerplate language. However, as noted

above, the ALJ considered and relied upon medical and school reports in finding that Plaintiff's and Claimant's claim that Claimant had marked limitations in domains other than domain six, i.e., health and physical well-being, was not supported by the record. Tr. 55-62. To the extent that Plaintiff suggests that, because the ALJ acknowledged that there was evidence that Claimant's history of chronic hepatitis disorder was causing severe limitations, the ALJ was bound to accept Plaintiff's and Claimant's statements that he had marked limitations in at least two domains, Plaintiff's argument is unpersuasive. The ALJ's conclusion that there was evidence that Claimant's history of chronic hepatitis disorder was causing severe limitations was made with respect to his evaluation of domain six, i.e., health and physical well-being. Tr. 62. The ALJ ultimately concluded that the Claimant did in fact have a marked limitation in the health and physical well-being domain. Thus, the ALJ accepted Plaintiff's and Claimant's statements to the extent that the ALJ found those statements to be supported by the other evidence of record. However, the ALJ's finding of a marked limitation in the domain of health and physical well-being did not require the ALJ to find a marked limitation in one or more of the remaining five domains. As discussed above, the ALJ's finding with respect to the domain of attending and completing tasks was supported by substantial evidence.

      Although Plaintiff disagrees with the ALJ's credibility assessment, the ALJ's analysis is sufficiently clear to allow this Court to determine whether the ALJ conducted a proper credibility assessment and whether that determination is supported by substantial evidence. Soc. Sec. Rul. 96–7p, 1996 WL 374186, at 4. In reviewing an ALJ's credibility determination, a court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476; *see also Gaffney*, 825 F.2d at 100 (A court may not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.").

17

Having reviewed the ALJ's decision, and considering that an ALJ's credibility assessment is to be accorded great weight and deference, considering the improvement in Claimant's symptoms reflected in both medical records as well as school records, the undersigned finds that the ALJ's credibility analysis regarding the severity of Claimant's impairments is supported by substantial evidence. Accordingly, Plaintiff's request to reverse and remand the Commissioner's decision on the basis of the ALJ's credibility assessment is without merit.

## VII. Conclusion

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision.

February 10, 2015

Kathleen B. Burke
United States Magistrate Judge